**Ray WALLACE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PITTSBURGH STEELERS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 16, 1998.

Decided Jan. 13, 1999.

---

Thomas C. Baumann, Pittsburgh, for petitioner.

J. Michael Doherty, Pittsburgh, for respondent.

Before FLAHERTY, J., LEADBETTER, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The primary issue on appeal is whether Pittsburgh Steelers Sports, Inc. (Employer) is entitled to a "dollar-for-dollar" credit against the compensation owed to Ray Wallace (Claimant) for a $65,000 lump sum injury settlement that Employer paid Claimant. Because it is, the decision of the Workers' Compensation Appeal Board (Board) is affirmed in part. A second issue is whether Employer unreasonably contested the work-relatedness of Claimant's injury. Because it did, the decision of the Board is also reversed and remanded in part.

The relevant facts are as follows. On September 17, 1989, and October 15, 1989, Claimant, a professional football player, suffered work-related injuries to his right knee. Because of the injuries, Claimant became totally disabled as of November 11, 1989. In accordance with the terms of the National Football League's collective bargaining agreement and Claimant's employment contract, Employer paid Claimant a lump sum of $65,000 [1] as compensation for his injury and subsequent loss of employment.

On September 4, 1992, Claimant filed two claim petitions under the Workers' Compensation Act (Act).[2] Employer filed an answer denying the allegations of the petitions, including a denial that Claimant's injuries were

---

1. Employer actually paid $75,000, but only sought credit against Claimant's workers' compensation benefits for $65,000.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1–1041.4.

work-related. By decision dated July 1, 1996, the Workers' Compensation Judge (WCJ) granted the claim petitions, concluding that Claimant had met his burden of proving that he injured his right knee during the course of his employment. The WCJ awarded total disability benefits, with such benefits later modified to partial disability as of April 1, 1990, when Claimant found employment with the Illinois Department of Transportation.

However, the WCJ also held that, pursuant to Article 10 of the National Football League's collective bargaining agreement,[3] Employer is entitled to a "dollar-for-dollar" credit of $65,000, to be applied against Claimant's workers' compensation benefits. Based on Claimant's weekly benefit rate of $399, the WCJ concluded that Employer was entitled to credit for 162.91 weeks of benefits.[4] The WCJ also held that Employer had a reasonable basis to contest the claim petitions. The Board affirmed, and Claimant appeals.

On appeal,[5] Claimant first argues that Employer should receive a credit against his workers' compensation benefits only until the expiration of his employment contract, which expired on February 1, 1990. Employer, conversely, argues that the WCJ and the Board correctly applied the law in ordering a "dollar-for-dollar" credit for the $65,000 lump sum payment.

An employer is entitled to receive credit for payments made in lieu of compensation prior to the resolution of an employee's claim for worker's compensation benefits. *Pittsburgh Steelers Sports, Inc. v. Workmen's Compensation Appeal Board (Erenberg)*, 145 Pa.Cmwlth. 547, 604 A.2d 319 (Pa.Cmwlth.) *appeal denied*, 530 Pa. 662, 609 A.2d 170 (1992). "Payments in lieu of compensation are 'any voluntary or informal compensation, apart from the Act, paid with the intent to compensate for a work-related injury.'" *Erenberg*, 604 A.2d at 322 (citation omitted). Both parties agree that the $65,-000 payment constitutes "payment in lieu of compensation" for which Employer is entitled to some amount of credit against Claimant's workers' compensation benefits. The dispute is whether Employer should receive a "dollar for dollar" credit for the entire $65,000 or receive credit only until the expiration of Claimant's employment contract, which would result in a credit less than $65,-000.

In *Erenberg*, faced with the same scenario as in this case, we held that the employer is entitled to a "dollar for dollar" credit. The employer in *Erenberg*, as in this case, was the Pittsburgh Steelers. And the claimant, as in this case, was a professional football player for the Pittsburgh Steelers. The claimant in *Erenberg* received a $65,000 lump sum injury payment, and we concluded that the employer was entitled to a "dollar for dollar" credit against the claimant's workers' compensation benefits. Because the claimant's weekly rate of compensation was $361; the employer received 180 weeks of credit.[6] Similarly, in *Station v. Workmen's Compensation Appeal Board (Pittsburgh Steelers Sports, Inc.)*, 147 Pa.Cmwlth. 512, 608 A.2d 625 (Pa.Cmwlth.), *appeal denied*, 532 Pa. 659, 615 A.2d 1315 (1992), we held, again under the same circumstances, that the employer was entitled to a "dollar for dollar" credit.

In arguing that Employer should only receive credit until the date of the expiration of his contract, February 1, 1990, Claimant cites *Joyner v. Workmen's Compensation Appeal Board (Pittsburgh Steelers Sports, Inc.)*, 667 A.2d 13 (Pa.Cmwlth.1995). In *Joyner*, yet

---

3. Article 10 states as follows:

> 10. Workers' Compensation. Any compensation paid to a player under this contract or under any collective bargaining agreement in existence ... for a period during which he is entitled to workmen's compensation benefits ... will be deemed an advance of workmen's compensation benefits due player, and club will be entitled to be reimbursed the amount of any such payment out of any award of workmen's compensation.

4. $65,000 divided by $399 equals $162.91.

5. Our review is limited to determining whether constitutional rights were violated or errors of law committed and whether relevant findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (Pa.Cmwlth.1988).

6. $65,000 divided by $361 equals $180.

another case involving the Pittsburgh Steelers and an injured player who received a lump sum injury settlement, we permitted the employer a credit from the date the player was discharged from employment to the date the player's employment contract expired. The Court made no reference to the "dollar for dollar" method used in *Station* and *Erenberg,* which were decided three years prior to *Joyner.*

The facts of *Joyner,* however, are such that the claimant's benefits actually *were* reduced "dollar-for-dollar," even though the court did not use that term. The claimant was paid a lump sum injury settlement of $25,000. The Court held that the employer was entitled to a $25,000 credit applied against the claimant's benefits from the date of his termination of employment, August 31, 1983, until the expiration of his employment contract, February 1, 1985, a total of 74 weeks. Because the total workers' compensation benefits due to the claimant during this period of time was $26,418 (74 weeks multiplied by a weekly benefit rate of $357), the employer still owed the claimant $1,418 ($26,418 minus $25,000). Thus, although not phrased as such, the employer did, *de facto,* receive a "dollar-for-dollar" credit for the entire $25,000.

If, hypothetically, the employer in *Joyner* had paid the claimant a lump sum injury settlement of $50,000 instead of $25,000, *then* the Court would have directly faced the "dollar-for-dollar" credit issue and would have been required to address *Station* and *Erenberg.* And under *Station* and *Erenberg,* the employer would have received a credit not just for the $26,418 in benefits due to the claimant during the life of his contract but for the full $50,000 (if, in fact, the claimant was scheduled to receive at least $50,000 in total workers' compensation benefits). The Court in *Joyner* did not reach the issue of the application of Article 10 of the National Football League's collective bargaining

agreement, but had it done so, it would have been required to utilize the "dollar-for-dollar" credit method mandated by *Station* and *Erenberg.*

■ Claimant next argues that Employer's contest of his claim petition was unreasonable.[7] On this point, we agree with Claimant.

The Board held that Employer's contest of the claim petition was reasonable because there was a "genuinely disputed issue ... concerning [Employer's] entitlement to a credit [for the lump sum payment] and the amount of such credit." Employer, however, could have contested the credit issue without unreasonably contesting the issue of whether Claimant suffered a work-related injury. Because, as shown below in the reproduced Findings of Fact of the WCJ, Employer's physician knew from the start that Claimant suffered a work-related injury, Employer should not have contested the work-relatedness of Claimant's injury. In its answer to the claim petitions, Employer made the following representations:

2. Claimant's disability, if any, is not causally related to a work injury.

\* \* \* \*

5. The Claimant is not disabled due to a work-related injury.

6. The Claimant did not suffer a work-related injury.

In *Milton S. Hershey Medical Center v. Workmen's Compensation Appeal Board (Mahar),* 659 A.2d 1067 (Pa.Cmwlth.1995), we held that, where the employer's physician examines a claimant and determines that she has a work-related injury before the claimant even files the claim petition, it is unreasonable for the employer to contest that the claimant has a work-related injury. Upon reviewing the record in this case, we con-

---

7. Section 440 of the Act, 77 P.S. §996, states as follows: "In any contested case where the insurer has contested liability in whole or in part, the employee ... in whose favor the matter at issue has been finally determined shall be awarded ... a reasonable sum for costs incurred ... Provided, that cost for attorney fees may be excluded when a reasonable basis for the contest has been established...." Under this section, the claimant's costs are to be paid by the employer *unless* the employer proves that the contest was reasonable, in which case the claimant is responsible for his or her own costs. *Mahar.* Thus, a claimant's costs are to be paid by the employer where the employer fails to prove that its contest of the claimant's petition was reasonable.

clude that, as in *Mahar*, Employer's physician was clearly aware that Claimant suffered a work-related injury long before Claimant filed his 1992 claim petitions, yet Employer still contested this issue, as shown above. We reach this conclusion based upon the findings of fact of the WCJ. These findings show that, not only did Employer's physician testify during the litigation that Claimant in fact suffered a work-related injury, but was aware from the very beginning that Claimant had a work-related injury:

7. ... On September 17, 1989, in a game against the Cincinnati Bengals, claimant was injured.... Claimant was subsequently examined by the team orthopedic surgeon, Dr. Thomas Cowan....

8. On October 15, 1989, in a game against the Cleveland Browns, claimant again sustained right knee injuries.... Claimant reported this injury to the trainer, and was subsequently seen by Dr. Cowan.... Claimant ultimately underwent right knee surgery on November 11, 1989....

9. Claimant participated in a rehabilitation program, and continued treatments with Dr. Cowan....

\* \* \* \*

15. Claimant presented the February 1, 1993 deposition and testimony of Thomas Cowan, M.D., a board-certified orthopedic surgeon. Dr. Cowan is the team physician for [Employer]. Dr. Cowan first examined claimant on September 19, 1989.... Dr. Cowan continued to examine claimant on a periodic basis after this injury.

16. On October 17, 1989, claimant reported increased symptoms and pain while playing in an October 15, 1989 football game.... Dr. Cowan noted swelling was increased, and pain was now present that was previously absent.... Claimant was advised to undergo arthroscopic surgery....

17. Claimant ultimately underwent arthroscopic surgery on November 13, 1989. Dr. Cowan found chondromalacia and degenerative tear of the medial meniscus. Dr. Cowan notes the degenerative tear did not appear to be fresh. Claimant was

examined every two weeks throughout the rest of the season.

18. Dr. Cowan last examined claimant during the season on December 19, 1989....

19. ... Dr. Cowan opined claimant's injuries are the direct result of the September and October, 1989 injuries.

These findings of fact show that Employer's physician, Dr. Cowan, was aware from the beginning that Claimant had suffered a work-related injury to his knee. Employer, nevertheless, contested the work-relatedness of Claimant's injury, which was unreasonable under *Mahar*.

Accordingly, that portion of the Board's decision holding that Employer is entitled to a "dollar-for-dollar" credit for the full $65,000 injury settlement is affirmed. That portion of the Board's order holding that Employer did not unreasonably contest Claimant's petitions is reversed, and the case is remanded for a determination of the amount of compensation due to Claimant for Employer's unreasonable contest of the work-relatedness of Claimant's injury.

### ORDER

AND NOW, this 13th day of January, 1999, that portion of the order of the WCAB in the above-captioned matter holding that Employer is entitled to a dollar-for-dollar credit of $65,000 is hereby affirmed. That portion of the order holding that Employer's contest of the claim petitions was reasonable is reversed, and the case is remanded for a determination of compensation due to Claimant.

Jurisdiction relinquished.

Judge LEADBETTER dissents as to unreasonable contest issue only.

Judge McGINLEY did not participate in the decision in this case.